UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
J.R. an infant, by her mother and natural guardian
DEBORAH BLANCHARD and DEBORAH
BLANCHARD, individually,

                          Plaintiffs,               **MEMORANDUM AND ORDER**

         — against —                            11-CV-841 (SLT) (MDG)

THE CITY OF NEW YORK, ET. AL.,

                          Defendants.
-------------------------------------------------------------X
**TOWNES, United States District Judge:**

      This matter primarily arises from family court proceedings involving Deborah Blanchard, her minor children, including J.R., Blanchard's daughter and the infant plaintiff in the current action, and Cecil Rivera, J.R.'s father. Blanchard initiated this action on behalf of herself and J.R., asserting state and federal law claims against the City of New York, John Mattingly, the former commissioner of the Administration for Children's Service ("ACS"), and Jan Flory, deputy commissioner of ACS (together, the "City Defendants"), as well as claims against the Episcopal Social Services of New York, Inc. ("Episcopal Social Services"), Tamika McKenzie, Marsha Ramsay, Marcia Lewis-Conyers, social workers employed by Episcopal Social Services, and Robert H. Gutheil, the Executive Director of Episcopal Social Services (together, the "Episcopal Services Defendants"). The plaintiffs allege that they were injured by the defendants' unlawful removal of J.R. from Blanchard's care and J.R.'s subsequent placement in an inadequate foster home.

      Presently before the court is the Episcopal Services Defendants' motion to dismiss.[1]

---

[1] It is unclear whether the Episcopal Services Defendants have brought the current motion pursuant to Rule 12(c) or 12(b)(6) of the Federal Rules of Civil Procedure. *See* Episcopal Services Defendants' Notice of Motion (Document No. 42) (indicating that the Episcopal Services Defendants seek an order pursuant to both Rule 12(b)(6) and 12(c)). As the Episcopal Services Defendants have not yet filed an answer to the plaintiffs' amended complaint, however, the court believes the motion is more properly viewed as one brought pursuant to Rule 12(b)(6). In any event, the distinction is immaterial, as the legal standards of review for motions to dismiss and motions for judgment on the pleadings are indistinguishable. *See La Faro v. New York Cardiothoracic Gr., PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009).

The amended complaint contains six counts, three of which apply to these defendants: (1) a claim by J.R. that the Episcopal Services Defendants maintain customs and policies that injured her pursuant to 42 U.S.C. § 1983 (Count II), (2) a negligence claim by J.R. (Count III), and (3) a professional malpractice claim by J.R. (Count VI).[2] As the plaintiffs indicate in their opposition to the motion to dismiss, Blanchard has not asserted any claims on her own behalf against the Episcopal Services Defendants. The Episcopal Services Defendants, seeking to dismiss all of the claims against them, assert that J.R.'s section 1983 against them is barred by the *Rooker-Feldman* doctrine and, alternatively, that J.R. cannot demonstrate that they maintain any custom or policy that reflects a deliberate indifference to her constitutional rights. Moreover, they assert that upon dismissal of the sole federal claim against them, this court should dismiss the remaining state law claims against them without prejudice for litigation in the state courts. For the reasons that follow, the Episcopal Services Defendants' motion is denied.

I. STANDARDS OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party

---

[2] Count I of the plaintiffs' complaint, which asserts a claim on behalf of both Blanchard and J.R., contains a single reference to the Episcopal Social Services and Gutheil. (Complaint ¶ 115.) Specifically, the plaintiffs allege that certain customs and policies depriving foster children of their constitutional rights existed as a result of these defendants' deliberate indifference. (Id.) However, as the only customs and policies mentioned in Count I pertain to those maintained by the *City Defendants*, it appears likely that inclusion of the Episcopal Services Defendants in that count was an error. The court therefore assumes for present purposes that Count I does not apply to the Episcopal Services Defendants.

2

does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

## II. BACKGROUND

Except where indicated, the following facts come directly from the amended complaint and are stated in a light most favorable to J.R., the party opposing dismissal.

J.R., the infant plaintiff, was born in 2006. Blanchard is her biological mother. (Complaint ¶¶ 2-3.) Prior to J.R.'s removal on July 2, 2008, her father, Rivera, physically and verbally abused her mother. (Id. ¶ 32.) On or about February 1, 2008, a Final Order of Protection was issued against Rivera directing him to stay away from Blanchard and refrain from initiating contact with her in any way. (Id. ¶ 33.) On June 4, 2008, a Report of Suspected Child Abuse or Maltreatment was filed with the New York State Office of Children and Family Services regarding Blanchard, J.R. and other of Blanchard's children residing in her household. That report indicated that Rivera had threatened to kill one of Blanchard's other children. (Id. ¶ 34.) The plaintiffs allege that at no time prior to the removal of J.R. from Blanchard's custody was J.R. physically or verbally abused by Rivera or placed in imminent danger or neglected by Blanchard. (Id. ¶¶ 38-39.) Nevertheless, on July 2, 2008 ACS removed J.R. from Blanchard's custody. (Id. at ¶ 44.) One year later, on July 6, 2009, the family court issued a final Order of Disposition directing that J.R. be "placed in the custody of the Commissioner of Social Services of New York County until the completion of the next permanency hearing." (Ex. E at 2 (Sealed Document Attached to the Episcopal Services Defendants' Motion to Dismiss).) The court further directed that "[o]n consent, the children are placed with ACS. [Blanchard] must continue in Domestic Violence and Mental Health service. [Blanchard] must also visit the children regularly and participate in the children's treatment program." *Id.*

On July 2, 2008 – the day that ACS removed J.R. from Blanchard's custody – the City of New York contracted with Episcopal Social Services to supervise the foster care placement of J.R.. (Complaint at ¶¶ 45-46.) Episcopal Social Services then placed J.R. in the foster home of

3

Gloria Castro and assigned social workers McKenzie, Ramsay, and Lewis-Conyers to oversee and supervise J.R.'s foster care while she resided with Castro. (Id. ¶¶ 46, 62.) In their complaint, the plaintiffs assert an array of reasons why Castro was both unqualified and incompetent to care for J.R. (Id. at ¶¶ 47-55.) Nevertheless, J.R. resided with Castro from July 2, 2008 until November 20, 2009. (Id. ¶ 59.) The plaintiffs allege that prior to placing J.R. in Castro's home, the Episcopal Services Defendants did not inspect the home to ensure it was safe for an infant and that the home was, in fact, unsafe and unsanitary. (Id. ¶¶ 56, 67-76.) In addition to the condition of Castro's home, the plaintiffs allege that during the time J.R. resided with Castro, her social, medical, and educational needs were not adequately met. (Id. ¶¶ 84-91.) Moreover, the plaintiffs allege that the progress notes submitted by Ramsay and reviewed by Lewis-Conyers and Episcopal Social Services were inaccurate and untruthful and did not reflect the actual condition of Castro's home or the care that J.R. was receiving. (Id. ¶¶ 64-65, 79, 81-83.)

On November 20, 2009 the New York City Police Department executed a warrant to enter Castro's home. (Id. ¶ 92.) Upon entering, the police found J.R. at home with no foster parent present, and instead found her with Jenny Roman, Castro's adult daughter, and two adult males who were watching pornography. (Id. ¶ 93.) The police further found dog feces in the bathroom and bathtub, razor blades on the floor and illegal drugs and drug paraphernalia throughout the home, all of which were accessible to J.R. (Id. ¶ 94.) Due to these conditions, the City of New York removed J.R. from Castro's home and transferred her to a different foster home. (Id. ¶ 96.) The plaintiffs allege that these conditions existed for a long enough period of time prior to execution of the police warrant that the Episcopal Services Defendants should have, and would have, been aware of them had they been properly supervising J.R. and the foster home in which she had been placed. (Id. ¶ 95.) J.R. remained in the custody of ACS until March 10, 2010, when Blanchard regained care and custody of her. (Id. ¶¶ 97, 102.) In due course, this action followed.

III. D<small>ISCUSSION</small>

A. The *Rooker-Feldman* Doctrine Does Not Apply to J.R.'s Section 1983 Claim Against the Episcopal Services Defendants

The Episcopal Services Defendants argue that J.R.'s section 1983 against them must be dismissed for lack of jurisdiction pursuant to the *Rooker–Feldman* doctrine. The *Rooker-Feldman* doctrine states, "[w]here a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker–Feldman* doctrine in certain circumstances." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005) (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4469.1 (2002)). "Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Id.* at 85. The Supreme Court has recently reined in the use of the doctrine, cautioning that it was meant to occupy a "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Court held that *Rooker–Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*

In the wake of *Exxon Mobil*, the Second Circuit revisited its prior precedents and limited the application of *Rooker–Feldman* to cases satisfying four "requirements":

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" -- *i.e.*, *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (alterations in original) (quoting *Exxon Mobil*, 544 U.S. at 284). The

5

first and fourth requirements are procedural, while the second and third are substantive. *Id.* To bar a claim asserted in federal court, all four requirements of the *Rooker-Feldman* doctrine must be met. *See Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548 (KMK), 2007 WL 2176059, at *4 (S.D.N.Y. Jul. 26, 2007).

Under the Second Circuit's holding in *Hoblock*, "federal plaintiffs are not subject to the *Rooker-Feldman* [jurisdictional] bar unless they *complain of an injury* caused by a state judgment." *Hoblock*, 422 F.3d at 87 (emphasis in original). The Second Circuit has referred to this requirement as "the key" to the *Rooker-Feldman* analysis and the "core requirement from which the others derive." *Id.* Here, in the court's view, J.R.'s section 1983 claim fails this requirement, rendering the *Rooker-Feldman* doctrine inapplicable. More to the point, J.R. does not challenge the family court's order removing her from her mother's custody and does not complain of any injury directly arising from that order. Rather, J.R. alleges only that she was harmed as a result of the Episcopal Services Defendants' subsequent independent decision to place her in an unsafe foster home and their failure to adequately supervise her foster care. Indeed, a decision by the federal court that J.R. sustained injuries due to the decisions of the Episcopal Services Defendants following her removal would not call into question any of the state court findings regarding neglect, imminent danger, or custody. As a result, to use the phraseology of the *Rooker-Feldman* doctrine, J.R. does not complain of an injury *caused by* the state court judgment nor does she invite "review and rejection" of that judgment. Accordingly, the court finds that J.R.'s claims against the Episcopal Services Defendants are not barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 61 (2d Cir. 2002) (concluding that the *Rooker-Feldman* did not apply to plaintiff's claim that "would not call into question any of the state court findings"). Nor does the court believe that J.R.'s claims are "inextricably intertwined" with the state court judgment such that they might be barred. *See Williams v. Williams*, No. 11–CV–246S, 2012 WL 639697, at *5 (W.D.N.Y. Feb. 27, 2012) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)) ("[W]here the claims were never

6

presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker–Feldman*.").

The Episcopal Services Defendants contend that even if *Rooker-Feldman* does not apply, J.R.'s claims are nonetheless precluded by *res judicata*. "[U]nder '*res judicata*, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action.'" *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d. 413, 421 (S.D.N.Y. 2008) (quoting *Parker v. Blauvelt Volunteer Fire Co.*, 712 N.E.2d 647 (1999)). New York has adopted the "transactional approach" to *res judicata*, which bars a later claim that arises out of the same "factual grouping" as an earlier claim -- regardless of whether the later claim is based on a different legal theory or seeks different relief. *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986). However, this bar will not be applied "if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Id.*

The court finds that *res judicata* does not bar J.R.'s claims. First, J.R.'s claims in this court arise from a different factual grouping than the claims asserted in family court. From the admittedly sparse record before this court regarding the Episcopal Services Defendants' motion, there is no indication that the family court at any time addressed the adequacy of the foster care that J.R. received while in Castro's home and whether the Episcopal Services Defendants bear responsibility for her placement and treatment in that home. Indeed, aside from the Episcopal Services Defendants bald assertion that there is a shared "factual grouping" between J.R.'s claims and those made in the family court, this court is not aware of any factual overlap between J.R.'s federal court claims asserted here and those considered by the family court in ordering J.R. removed from her mother.[3]

---

[3] Although not specifically raised by the Episcopal Services Defendants, J.R.'s claim would similarly not fall victim to the doctrine of collateral estoppel, or issue preclusion, because the issues decided by the family court regarding J.R.'s removal are not decisive of the issues raised in her section 1983 claim before this court; namely, whether these defendants' customs

7

Second, to the extent that J.R. seeks monetary damages under her section 1983 claim, *res judicata* does not bar the action because the New York family court does not have the power to award damages. *See Polite v. Button*, 999 F. Supp. 705, 709 (N.D.N.Y. 1998) ("The Family Court's adjudication terminating plaintiff's parental rights does not have preclusive effect in this § 1983 action for damages because the Family Court did not have the power to award all the relief plaintiff presently seeks."); *see also Thomas v. New York City*, 814 F. Supp. 1139, 1148 (E.D.N.Y. 1993) (concluding that family court order did not have *res judicata* effect over claims for money damages in part because the family court lacks the authority to award such relief). Thus, J.R.'s claims against the Episcopal Services Defendants may proceed.

B. J.R. has Stated a Plausible Claim for Relief Pursuant to 42 U.S.C. § 1983

A claim under § 1983 requires both "(1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the Untied States." *Dwares v. City of New York*, 985 F.2d 94, 96 (2d Cir. 1993).

1. The Episcopal Services Defendants Acted Under the Color of State Law

The Episcopal Services Defendants argue that as a private institution, Episcopal Social Services is not a state actor and was not acting under the color of state law in its placement and supervision of J.R. in foster care. It necessarily follows, they argue, that the executive director and employees of a private institution such as Episcopal Social Services are likewise shielded from liability under section 1983. The court disagrees.

"In the case of private child care agencies, courts in this Circuit have consistently held that such institutions act under color of state law for § 1983 purposes if the organizations are

---

and policies regarding her placement and supervision in foster care deprived her of her constitutional rights. *See Evans v. Ottemo*, 469 F.3d 278, 281 (2d Cir. 2006) (noting that under New York law, collateral estoppel "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.")

8

authorized by New York Social Services Law to care for neglected children, at least insofar as they perform actions relevant to those duties." *Phillips ex. rel. Green v. City of New York*, 453 F. Supp. 2d 690, 737 (S.D.N.Y. 2006) (collecting cases). Thus, the question is whether the Episcopal Services Defendants were "authorized by statute to care for neglected children" and whether the actions at issue "relate to the acceptance or care of a child placed with the agency by the City." *Id.* at 738. Here, the plaintiffs have adequately pled that Episcopal Social Services was an "authorized agency," alleging in their complaint that "the City of New York contracted with [Episcopal Social Services] to supervise the foster care placement of the infant plaintiff, J.R." and that, Episcopal Social Services subsequently "placed the infant J.R. in the non-kinship foster home of Gloria Castro." (Complaint ¶¶ 45-46.) Moreover, the relevant conduct here, which consists of the customs and policies maintained by the Episcopal Social Services to supervise foster parents, as well as the services performed by its staff regarding the supervision and oversight of foster parents, relates directly to the foster care services assigned Episcopal Social Services by the City of New York. Put another way, the Episcopal Services Defendants' actions at issue are those which "would have been performed by the City of New York had [Episcopal Social Services] not undertaken those actions." *Phillips*, 453 F. Supp. 2d at 738. The actions undertaken here by the Episcopal Services Defendants were therefore taken under color of state law, and J.R. may pursue her section 1983 claim against them.

    2. <u>J.R. has Asserted that Episcopal Social Services Maintains Customs and Policies that are Actionable Under Section 1983</u>

The Episcopal Services Defendants next argue that as a private institution, it cannot be held liable on a theory of respondeat superior. As the Second Circuit has held, the Supreme Court's decision in *Monell* allowing section 1983 claims against municipalities applies with equal force to private institutions sued under section 1983. *See Mejia v. City of New York*, 119 F. Supp. 2d 232, 275 (E.D.N.Y. 2000); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) ("Private employers are not liable under § 1983 for the constitutional torts of their

9

employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'") (quoting *Monell*, 436 U.S. at 691) (internal citation omitted) (ellipsis and emphasis in original). Thus, the Episcopal Services Defendants are correct that to prevail on her 42 U.S.C. § 1983 claim against Episcopal Social Services, J.R. must show that a policy or custom caused the deprivation of her constitutional rights, *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 690–91 (1978); a private institution may not be held liable under § 1983 on the basis of respondeat superior. *Id.* at 694. The court finds no basis, however, for the Episcopal Services Defendants' argument that J.R.'s complaint contains "no . . . assertion of . . . a custom, policy or practice by [Episcopal Social Services]." (The Episcopal Services Defendants' Motion to Dismiss at 9-11.) To the contrary, as the plaintiffs point out, their complaint alleges that Episcopal Social Services and Gutheil maintained a variety of customs and policies that failed to adequately train and supervise their employees and that inadequately oversaw the children placed in their care and the foster parents and homes in which those children were placed. (Complaint ¶¶ 124, 126, 128-33).

In essence, J.R. alleges that, taken together, maintenance of these customs and policies constitute a dereliction of the Episcopal Services Defendants' constitutional duty to protect her while she was in ACS' custody, an obligation well-established by law. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (noting that "when the State takes a person into its custody and holds [her] there against [her] will, the Constitution imposes upon it a corresponding duty to assume some responsibility for [her] safety and general well-being."). To be sure, the Second Circuit has identified "fundamental" differences between the duty to protect as it arises in the context of "the relationship of a foster care agency to the family it licenses" and the way that duty arises in other supervisory situations. *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 142 (2d Cir. 1981) (*Doe I*). The Second Circuit therefore cautioned that in the foster care context, perhaps liability "ought not be inferred from a failure to act as readily as might be done in the prison context, since in the foster care situation, there are

10

obvious alternative explanations for a family being given the benefit of the doubt and the agency refusing to intervene." *Id.* Nevertheless, the court indicated that "gross negligence," or even "repeated acts of negligence," such as that which could be inferred from the Episcopal Services Defendants' customs and policies at issue here, could constitute "deliberate indifference" and a breach of a governmental custodian's duty to protect. *Id.*; *see also Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782 (1983) (*Doe II*) (noting that liability in the foster care context "could be based on inferring deliberate unconcern 'from a pattern of omissions revealing deliberate inattention to specific duties imposed for the purpose of safeguarding plaintiffs from abuse.'") (quoting *Doe I*, 649 F.2d at 145.) Accordingly, dismissal is not appropriate on these grounds.

### 3. J.R. has Adequately Pled that Her Injuries Resulted From the Episcopal Services Defendants' Deliberate Indifference To Her Constitutional Rights

The Episcopal Services Defendants also argue that dismissal of J.R.'s section 1983 claim is required because J.R. cannot demonstrate that they were deliberately indifferent to her constitutional rights. "Government officials may be liable under § 1983 for acts as well as omissions; thus, '[w]hen individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution.'" *Richards v. City of New York*, 433 F. Supp. 2d 404, 422 (S.D.N.Y. 2006) (quoting *Doe v. New York City Dep't of Soc. Serv.*, 649 F.2d 134, 141 (2d Cir.1981)). Particularly, "children in foster care [have] a substantive due process right [under the Fourteenth Amendment] to protection from harm." *Tylena M. v. Heartshare Children's Servs.*, 390 F.Supp.2d 296, 302 (S.D.N.Y. 2005) (internal quotation marks omitted) (alterations in original). This right to be free from harm includes the right to essentials of care such as adequate food, shelter, clothing, and medical attention. *See Richards*, 433 F. Supp. 2d at 422 (citing *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005)).

As indicated, Episcopal Social Services is a government custodian charged by the City of New York with supervising the placement of foster children like J.R. To hold a government

custodian liable under section 1983 for failing to perform its affirmative duties to an individual in its custody, two requirements must be met: (1) "the omissions must have been a substantial factor leading to the denial of a constitutionally protected liberty or property interest"; and (2) "the officials in charge of the agency being sued must have displayed a mental state of 'deliberate indifference' in order to 'meaningfully be termed culpable' under § 1983."[4] *Doe*, 649 F.2d at 141. An agency's alleged failure to supervise is a substantial factor leading to the denial of a foster child's constitutional right to be protected from harm when, had the agency "investigated [the child's] case with sufficient acuity and diligence to discover the abuse, it would have been able to prevent further abuse by withdrawing her from the home." *Id.* at 144. Thus, the Episcopal Services Defendants are liable for J.R.'s injuries if they "exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." *Id.* at 145. An agency demonstrates deliberate indifference that supports a failure-to-supervise claim if it "should have known that inadequate . . . supervision was 'so likely to result in the violation of constitutional rights, that [it] . . . can reasonably be said to have been deliberately indifferent to the need.'" *Walker v. City of New York*, 974 F.2d 293,

---

[4] The court is aware that the standard test for liability for a failure to supervise employees requires a showing that: (1) the defendant knows " 'to a moral certainty' that her employees will confront a given situation;" (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297–298 (2d Cir. 1992). However, the leading Second Circuit case dealing with section 1983 claims against a city for failing to protect foster children from abuse, *Doe*, formulates the failure to supervise claim as the failure to supervise the foster care "placement." *Doe*, 649 F.2d at 137. *Doe* was decided before *Walker* and does not employ the latter's test for evaluating liability based on a failure to supervise. *Tylena M.*, 390 F. supp. 2d at 303. n.3. However, because the claims at issue in *Doe* are closer in kind to the claims at issue here than those at issue in *Walker*, this court will follow, as the court did in *Tylena M.*, the analysis set forth in *Doe*, which focuses on whether the defendant's acts or omissions were "a substantial factor leading to the denial of a constitutionally protected liberty or property interest" and whether the defendants "have displayed a mental state of 'deliberate indifference.'" *Id.* (quoting Doe, 649 F.2d at 141).

298 (2d Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

J.R. essentially alleges that Episcopal Social Services maintained polices and customs authorized by Gutheil that: (1) inadequately supervised their caseworkers charged with providing foster care services to J.R., (2) provided no method by which to verify whether the progress notes provided by their caseworkers were true and accurate, and (3) inadequately governed the investigation, certification, and selection of foster parents for particular foster children. (Complaint ¶¶ 106, 110, 112-15.) Drawing all inferences in favor of J.R., the court finds that the existence of such policies and customs could constitute deliberate indifference on the part of Episcopal Social Services and Gutheil to the increased risk such policies would pose that foster children would be abused in their foster homes. Further, such policies and customs could be a "substantial factor leading to the denial" of J.R.'s right to be protected from harm while in foster care.

J.R. seeks to hold Episcopal Social Services and Gutheil liable, in part, for maintaining a policy and custom whereby no efforts were made to verify the truth and accuracy of reports submitted by their caseworkers, reports which J.R. maintains were incorrect. The court sees no reason why a government custodian should not bear at least the same responsibility to verify its own caseworkers' progress reports as a municipality bears to verify reports it receives from its custodians. *See Tylena M.,* 390 F. Supp. 2d at 304, 307-08 (denying municipality's motion for summary judgment in part because a reasonable jury could conclude that the city's maintenance of a policy whereby it failed to verify progress reports passed on to it via its custodians constituted "deliberate indifference" to the risks created by that policy). Whether J.R. can ultimately demonstrate that the claimed deficiencies in the Episcopal Services Defendants' policies exists is not, of course, for the court to decide at this time. It is enough for present purposes that the complaint contains sufficient allegations that J.R. has stated a plausible claim of relief. *See Twombly*, 550 U.S. at 569. The court will therefore deny Episcopal Social Services and Gutheil's motion to dismiss.

The court also rejects the Episcopal Services Defendants' argument that the plaintiffs have failed to state claims against McKenzie, Ramsay, and Lewis-Conyers. The plaintiffs allege in their complaint that these defendants did not adequately investigate J.R.'s foster parent or the conditions of her foster home, were aware of the conditions in J.R.'s foster home but did not act, and intentionally filed untrue or inaccurate progress notes regarding the conditions in J.R.'s foster home. Assuming as it must the truth of these allegations, the court finds dismissal of J.R.'s section 1983 claim against these defendants similarly unwarranted. *Cf. Phelan ex. rel. Phelan v. Torres*, Nos. 1:04–cv–03538–ERK–CLP, 1:06–cv–01663–ERK–CLP, 2011 WL 6935354, at *33 (E.D.N.Y. Dec. 30, 2011) (dismissing claims against individual city caseworkers on summary judgment where there was "no evidence that [the individual] was grossly negligent with respect to an obvious risk of serious harm.").

Finally, the court notes that the Episcopal Services Defendants' arguments regarding dismissal of J.R.'s state law claims (Counts III and IV) appears entirely premised on the court's dismissal of J.R.'s sole federal claim against them -- the section 1983 claim contained in Count II. In light of the court's determination that dismissal of the federal claim is not appropriate at this time, the court will deny the Episcopal Services Defendants' motion to dismiss J.R.'s state law claims as well.

IV. CONCLUSION

For the reasons stated, the Episcopal Services Defendants' motion to dismiss Counts II-IV against them (Document No. 42) is hereby DENIED.

SO ORDERED.

_____/s/_____

SANDRA L. TOWNES
United States District Judge

Dated: Sept. 28, 2012
      Brooklyn, New York