UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
J.R. an infant, by her mother and natural guardian
DEBORAH BLANCHARD and DEBORAH
BLANCHARD, individually,

                        Plaintiffs,        **MEMORANDUM AND ORDER**

       — against —                    11-CV-841 (SLT) (MDG)

THE CITY OF NEW YORK, ET. AL.,

                        Defendants.
----------------------------------------------------------X

**TOWNES, United States District Judge:**

      This matter is largely borne from family court proceedings involving Deborah Blanchard, her minor children, including J.R., Blanchard's daughter and the infant plaintiff in the current action, and Cecil Rivera, J.R.'s father. Blanchard initiated this action on behalf of herself and J.R., asserting state and federal law claims against the City of New York, John Mattingly, the former commissioner of the Administration for Children's Service ("ACS"), and Jan Flory, deputy commissioner of ACS (together, the "City Defendants"), as well as claims against the Episcopal Social Services of New York, Inc., Tamika McKenzie, Marsha Ramsay, Marcia Lewis-Conyers and Robert H. Gutheil (together, the "Episcopal Services Defendants"). The plaintiffs allege they were injured by the defendants' unlawful removal of J.R. from Blanchard's care and J.R.'s subsequent placement in an inadequate foster home.[1]

      Presently before the court is the City Defendants' motion to dismiss brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The City Defendants seek to dismiss only those claims asserted against them by Blanchard in her individual capacity. The amended complaint contains six counts, three of which initially applied to the City Defendants: (1) a claim that the City Defendants maintained customs and policies that deprived Blanchard of her Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 (Count I), (2) a claim regarding

---

[1] In a prior memorandum and order (Document No. 58), the court denied the Episcopal Services Defendants' motion to dismiss.

the City Defendants' failure to provide services regarding Blanchard's reunification with her daughter (Count V), and (3) a claim that the City Defendants violated the New York State Constitution (Count VI). Blanchard has since withdrawn her fifth and sixth causes of action, leaving only Count I as to the City Defendants. The City Defendants assert that Blanchard's section 1983 claim against them is barred by the *Rooker-Feldman* doctrine and, alternatively, raise a defense of qualified immunity. For the reasons that follow, the City Defendants' motion is granted.[2]

## I. STANDARDS OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). In resolving the question of jurisdiction, the district court "can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

---

[2] Although the court's analysis likely applies with equal force to J.R.'s claims asserted in Count I, because the City Defendants have sought dismissal only of Blanchard's section 1983 claim asserted against them in her individual capacity, the court accordingly confines its discussion to that claim.

2

*Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). Somewhat conversely, because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," see *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) (internal citations omitted), a court deciding such a motion "is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007). However, in some circumstances, a court may consider documents other than the complaint. For example, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir.1998)).

## II. BACKGROUND

Except where indicated, the following facts come directly from the amended complaint and are stated in a light most favorable to Blanchard, the party opposing dismissal.

J.R., the infant plaintiff, was born in 2006. Blanchard is her biological mother. (Complaint ¶¶ 2-3.) Prior to J.R.'s removal on July 2, 2008, her father, Rivera, physically and verbally abused Blanchard. (Id. ¶ 32.) On or about February 1, 2008, a Final Order of Protection was issued against Rivera directing him to stay away from Blanchard and refrain from initiating contact with her in any way. (Id. ¶ 33.) On June 4, 2008, a Report of Suspected Child Abuse or Maltreatment was filed with the New York State Office of Children and Family Services regarding Blanchard, J.R. and other children residing in Blanchard's household. That report indicated that Rivera had threatened to kill one of Blanchard's children. (Id. ¶ 34.) Blanchard alleges that at no time prior to the removal of J.R. from her custody on July 2 was her infant daughter physically or verbally abused by Rivera or placed in imminent danger or neglected by Blanchard. (Id. ¶¶ 38-39.) These allegations notwithstanding, the family court issued a series of rulings over the course of several hearings resulting in J.R.'s removal from Blanchard's custody. The most relevant of these rulings are described below.

3

### The July 1, 2008 Hearing

On July 1, 2008 the family court held a hearing on a petition for neglect filed by ACS against Blanchard regarding care for her three minor children, including J.R., at which time Blanchard was appointed counsel. (Id. ¶ 41; Ex. B at 1, 4 (Sealed Document Attached to the City Defendants' Motion to Dismiss).) At the hearing, the court found that given the history of domestic violence between Blanchard and Rivera, Rivera posed a threat to the children. Nonetheless, the court concluded that "the safety issues can be addressed with strict compliance with the Court's orders, namely that [Blanchard] go tonight to a domestic violence shelter with the children." (Ex. B at 73.) The court ordered Blanchard to "go to a domestic violence shelter, follow the rules of the shelter. Do not disclose the location to Mr. Rivera." (Id. at 74.) The court also ordered Blanchard to comply with the Order of Protection the court issued that night indicating that Rivera was to stay away from Blanchard and her children. (Id.) The court admonished Blanchard that if "there is one spot of noncompliance with [its] order, [she] let [her] kids down because they are going into foster care." (Id.)

### The July 2, 2008 Hearing

On the following day, July 2, ACS again appeared in family court, indicating that it had conducted an emergency removal of Blanchard's three minor children, including J.R. (Complaint ¶ 44; Ex. C at 1, 5 (Sealed Document Attached to the City Defendants' Motion to Dismiss).) Despite being advised of the hearing, Blanchard did not appear. (Ex. C at 5.)

At the hearing, ACS indicated that new information had come to light requiring emergency removal of the children. (Id. at 8-10.) ACS indicated that it had learned that on several occasions Rivera had threatened Blanchard's minor daughter with a knife. (Id. at 9-10.) ACS further indicated that it had learned that Blanchard had not seen one of her minor children with special needs for nearly a week and that his whereabouts were then unknown. (Id. at 9.) Finally, ACS indicated that, in violation of the court's order, Blanchard had not entered a domestic violence shelter. (Id. at 10.) According to ACS, Blanchard had been evicted from a

4

domestic violence shelter in Queens and had been refused entry into another. The shelter had denied her entry because, despite being aware of the family court's order, it required all individuals to have suffered an incident of domestic violence within the past three months, and Blanchard stated that she had not. (Id.; Complaint ¶ 43.) Based on this information, the family court granted remand of J.R. and Blanchard's other minor daughter to ACS, and issued a warrant for the missing child to be returned to foster care. (Ex. C at 21.)

July 21, 2008 Proceedings

On July 21, 2008, the family court concluded proceedings regarding the custody of Blanchard's children, including J.R. (Ex. F at 3 (Sealed Document Attached to the City Defendants' Motion to Dismiss).) The court stated that, initially, it believed the primary issue in the case was domestic violence and that the children's safety could be adequately protected with an order directing Blanchard to reside at a domestic violence shelter. (Id. at 18.) Despite the fact that the court expressed reservations about whether such measures would still adequately protect the children, it indicated that were the incidents of domestic violence the only issue in the case, it might be inclined to return the children to Blanchard. Nonetheless, the court noted that since the July 1, 2008 hearing, the record had been supplemented with evidence "that shows that Ms. Blanchard demonstrated severely inappropriate judgment in other areas." (Id. at 21-22.) In particular, the court noted Blanchard's decision to leave J.R. in Rivera's home, "notwithstanding her knowledge of Mr. Rivera's drinking problem and violent nature," the fact that Blanchard's minor children were sometimes cared for by her older children, despite that such "lack of supervision on [Blanchard's] part was . . . ill-advised," and that despite struggling with depression, Blanchard admittedly stopped taking medication and missed therapy appointments. (Id. at 23-24.) In light of these considerations, the court concluded that the children would be "at imminent risk if returned to Ms. Blanchard" and ordered their continued removal. (Id. at 19, 25.)

Order of Disposition

On July 6, 2009, the family court issued an Order of Disposition. The court, based on "the findings made at the dispositional hearings and upon all proceedings had herein," ordered that the children be "placed in the custody of the Commissioner of Social Services of New York County until the completion of the next permanency hearing." (Ex. G at 2 (Sealed Document Attached to the City Defendants' Motion to Dismiss).) The court further ordered that "[o]n consent, the children are placed with ACS. [Blanchard] must continue in Domestic Violence and Mental Health service. [Blanchard] must also visit the children regularly and participate in the children's treatment program." Id.

On March 10, 2010, Blanchard regained care and custody of J.R. (Complaint ¶ 102.) In due course, this action followed.

III. DISCUSSION

A. The Rooker-Feldman Doctrine Applies to Blanchard's Section 1983 Claim Against the City Defendants

The City Defendants argue that Blanchard's action must be dismissed for lack of jurisdiction pursuant to the Rooker–Feldman doctrine. Indeed, "[w]here a federal suit follows a state suit, the former may be prohibited by the so-called Rooker–Feldman doctrine in certain circumstances." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 83 (2d Cir.2005) (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4469.1 (2002)). "Underlying the Rooker–Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." Id. at 85. The Supreme Court has recently reined in the use of the doctrine, cautioning that it was meant to occupy a "narrow ground." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Court held that Rooker–Feldman "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court

6

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*

In the wake of *Exxon Mobil*, the Second Circuit revisited its prior precedents and limited the application of *Rooker–Feldman* to cases satisfying four "requirements":

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" -- *i.e.*, *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (alterations in original) (quoting *Exxon Mobil*, 544 U.S. at 284). The first and fourth requirements are procedural, while the second and third are substantive. *Id.* Here, the court believes that all four factors of the *Rooker-Feldman* doctrine are satisfied and that the doctrine applies to Blanchard's section 1983 claim against the City Defendants.

### 1. *Rooker-Feldman's* Procedural Requirements are Satisfied

As indicated, the *Rooker-Feldman* doctrine contains two procedural requirements; the federal court plaintiff must have lost in state court and the state court judgment must have been rendered before the district court proceedings commenced. As an initial matter, no party argues that the state court judgment was rendered after the district court proceedings commenced and the court finds that prong satisfied. Moreover, the court finds that Blanchard lost in state court when the family court issued its order of disposition remanding custody of J.R. to ACS.

Blanchard, relying on the Second Circuit's decision in *Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009), argues that she is not a state-court loser for purposes of the *Rooker-Feldman* doctrine because the order of disposition only temporarily transferred custody of her daughter to ACS "until the completion of the next permanency hearing" and she eventually regained custody. (Ex. G at 2.) Blanchard's reliance on *Green* is misplaced. In *Green*, the

7

family court had issued a temporary order in an *ex parte* proceeding remanding custody to ACS. Four days later, the plaintiff contested the order and the family court issued a superseding order returning the child to the plaintiff. The family court then adjourned the proceedings in "contemplation of dismissal" and the petition was automatically dismissed. *Green*, 585 F.3d at 102. The Second Circuit, in declining to apply the *Rooker-Feldman* doctrine, noted that "[a]lthough there was no final adjudication in plaintiff's favor, there was also no final 'order of disposition' removing her child and plaintiff secured the reversal of the one form of interlocutory relief entered against her." *Id.* (internal citation omitted). Under those circumstances, the court concluded that *Rooker-Feldman* did not bar the plaintiff's claim. In contrast here, the family court issued several orders including a final order of disposition remanding custody of J.R. to ACS. Indeed, although Blanchard eventually regained custody of J.R., at no point did she succeed in reversing any of the family court's orders. Rather, as the City Defendants point out in their reply, Blanchard regained custody by following the conditions imposed on her by the family court pursuant to the court's order of disposition.

Moreover, the court finds unavailing Blanchard's argument that the order of disposition is not a final order against her because it did not permanently remove her children from her custody. First, orders of disposition are deemed to be final orders. *See Allen v. Mattingly*, 2011 WL 1261103, at *8 (E.D.N.Y. Mar. 29, 2011) (concluding that plaintiff lost in state court because she had lost custody of her son pursuant in part to an order of disposition); *id.* (citing *Matter of Yamoussa M.*, 646 N.Y.S.2d 319 (1st Dep't 1996)) ("An 'order of disposition' is synonymous with a final order of judgment"). Second, for purposes of determining whether a plaintiff lost in state court, the Second Circuit in *Green* did not indicate that an order of disposition is final only if it orders the permanent removal of custody. Rather, the court merely noted the absence of any final order to indicate that although there was no final adjudication, the plaintiff could not be considered to have "lost" in state court when she had successfully reversed the one form of interlocutory relief entered against her. *Green*, 585 F.3d at 102. That is not the situation here.

Thus, the court finds that the procedural requirements of the *Rooker-Feldman* doctrine have been met.

## 2. *Rooker-Feldman's* Substantive Requirements are Satisfied

Even if the procedural requirements of the *Rooker-Feldman* doctrine have been satisfied, Blanchard may nonetheless pursue her section 1983 claim against the City Defendants if the substantive requirements are not also met. In this regard, Blanchard argues that her action does not invite this court's review and rejection of the family court's judgment. The court disagrees.

In the complaint, Blanchard alleges that the City Defendants maintain a variety of policies and customs related to decisions to remove children from a custodial parent's care. She then alleges that as a result of these policies and customs she sustained two injuries giving rise to her section 1983 claim: a violation of the due process rights accorded to her regarding the custody of her child and a violation of her Fourth Amendment right protecting her against the unreasonable seizure of her child. To determine whether Blanchard's section 1983 claim is the kind of claim that is not barred by the *Rooker-Feldman* doctrine, *i.e.* an independent claim based on an injury that was not caused by the state-court judgment, the court must first determine whether the injuries Blanchard complains of in Count I of her complaint were caused by the family court's order of removal. *See McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) (noting that the *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," so long as "a federal plaintiff present[s] some independent claim[, *i.e.*, a claim based on an injury that was not *caused* by the state-court judgment,] albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party") (quoting *Exxon Mobil*, 544 U.S. at 293) (emphasis and all alterations in original). Although Blanchard couches her claim as one against the City Defendants and not as a request for review of the family court order, as the Second Circuit cautioned in *Hoblock*, "a federal suit

9

complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state court judgment and not simply ratified, or left unpunished by it." *Hoblock*, 422 F.3d at 88. Indeed, "[j]ust presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker–Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed. *Id.* at 87.

Here, the court finds that the injuries for which Blanchard seeks to recover from the City Defendants were caused by the state court judgment and that her section 1983 claim against them is accordingly barred from this court's consideration. On July 1, 2008 the family court ordered Blanchard to "go to a domestic violence shelter, follow the rules of the shelter" and warned her that if "there is one spot of noncompliance with [the court's] order," Blanchard's children would be placed in foster care. (Ex B at 74.) It is undisputed that Blanchard did not enter a domestic violence shelter that night and, despite the reasons proffered for Blanchard's noncompliance, the court believes that the family court order was sufficiently specific so as to grant ACS with the authority to remove J.R. from Blanchard's custody. *Cf. Phillips ex. rel. Green v. City of New York*, 453 F. Supp. 2d 690, 717 (S.D.N.Y. 2006) (rejecting defendants' argument that the relevant injury resulted from a family court order issued prior to the removal of the child because the order did not direct the ACS caseworkers to remove the child upon violation of its conditions). It is the family court order, therefore, not the City Defendants' practices, which produced Blanchard's injuries arising from the removal of her infant daughter.

Even assuming, however, that the City Defendants acted not pursuant to the family court's initial order, but on information that emerged after the July 1, 2008 hearing, the court would still conclude that the relevant injuries arose out of the state court judgment. This is because in the context of an emergency child custody removal, "judicial action [is] a *prerequisite* to effectuate a valid removal of a child from her parent[ ]." *Id.* at 716-17 (emphasis added); *see also* N.Y. Family Court Act § 1026 (2005) (mandating that following the emergency

10

removal of a child from custody, the agency must either return the child within twenty-four hours or file a petition with the court seeking approval no later than the next court day after the child was removed). Indeed, the very nature of an emergency child custody removal means that the removal of the child will ordinarily -- if not always -- precede any court's order approving it. The district court in *Phillips* explained this "theoretical difficulty." *Phillips*, 453 F. Supp. 2d at 717. "[A]lthough intuitively it might seem that in a post-removal hearing, the Family Court merely 'ratifies' the alleged constitutional injury rather than causes it, here it makes more sense to conclude that the Family Court order did cause the claimed injury—*i.e.*, the child custody removal—rather than merely affirm it." *Id.* This is so because had "the Family Court found otherwise . . . and not granted the removal order, [J.R.] would have had to have been returned to [Blanchard]." *Id.*

It necessarily follows that it was the court's order of removal that caused the relevant injuries to Blanchard. *See id.* ("Although the caseworkers acted prior to the issuance of the state court judgment, their actions were allowed and officially authorized only by that state court judgment."); *see also Hoblock*, 422 F.3d at 87 ("[I]f the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child."). To decide otherwise would permit plaintiffs to challenge family court orders authorizing emergency removal simply because the required approval was rendered after the removal. This would in essence transform the district courts into courts of appeals for all such orders; a result that defeats the primary aim of the *Rooker-Feldman* doctrine and exceeds the boundaries of the federal district courts' jurisdiction. *See Hoblock*, 422 F.3d at 83 (explaining that the *Rooker-Feldman* doctrine gives force to the mandate that the "jurisdiction possessed by the District Courts is strictly original," and makes clear that to sit in judgment of state court decisions is "an exercise of appellate jurisdiction which only the Supreme Court possesses.") (internal quotation marks omitted).

11

In sum, the injuries for which Blanchard seeks to recover in her section 1983 claim against the City Defendants emanate only from the state-court judgment. Thus, her section 1983 claim is not "independent" for purposes of the Rooker-Feldman doctrine and this court is barred from considering its merits. See Hoblock, 422 F.3d at 87 (asking whether "the voters' federal constitutional claims [are] independent of the state-court judgment, or [whether] the voters' federal suit assert[s] injury based on a state judgment and seek[s] review and reversal of that judgment); see also Phillips, 453 F. Supp. 2d at 718 ("The meaning of 'independent' in this context is that the relevant injury is not caused by the state court judgment, but, rather, is independent of it.").

Moreover, the court does not find persuasive Blanchard's argument that she does not invite review and rejection of the state court judgment. Blanchard asserts that she has not "repaired to federal court to undo the [Family Court] judgment" because the judgment against her-- the removal of J.R. – has already been undone. 585 F.3d at 103 (quoting Exxon Mobil, 544 U.S. at 293) (alteration in original). It is of little moment, however, that Blanchard does not seek review of the state court's order of removal for the purpose of regaining custody of her child. As discussed, in order for Blanchard to recover on her section 1983 claim against the City Defendants, this court must essentially reject the family court's order authorizing removal, which it cannot do. (See Complaint ¶ 1) (alleging that the City Defendants "unlawfully removed [J.R.] from [Blanchard]," suggesting that Blanchard seeks a determination by this court that the family court's order was erroneous).) Indeed, as the plaintiffs appear to acknowledge in other papers filed before this court, Count I of the complaint "seek[s] to reverse or modify the Family Court's determination to remove [J.R.] from [Blanchard's] care and custody." (Plaintiffs' Opposition to Episcopal Services Defendants' Motion to Dismiss at 17.) In any event, the Rooker-Feldman doctrine applies to Blanchard's section 1983 claim against the City Defendants and this court accordingly lacks jurisdiction to consider it. The court therefore need not address the parties' remaining arguments regarding qualified immunity.

## IV. CONCLUSION

For the reasons stated, the City Defendants' motion to dismiss [50] Count I is GRANTED insofar as it seeks dismissal of Blanchard's individual claim against them.

SO ORDERED.

s/ SLT

/SANDRA L. TOWNES
United States District Judge

Dated: November 26, 2012
Brooklyn, New York

13